# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**R & G STUDENT HOUSING, LLC,**

        **Plaintiff,**

**v.**                                                    **Case No:   6:16-cv-1363-Orl-31DAB**

**PHOENIX SUSTAINABLE GROUP,**
**LLC,**

        **Defendant.**

_____

## ORDER

This matter is before the Court on Defendant's Emergency Motion to Enforce the Parties'

Negotiated Arbitration Provision (Doc. 18) and Plaintiff's Response (Doc. 20) to the same.

## I.      Background

According to the Complaint (Doc. 2), which is accepted in pertinent part as true for the

purpose of resolving this motion, Plaintiff, R & G Student Housing, LLC (hereinafter "RGSH"),

develops and acquires residential complexes located near college campuses. Compl. at ¶¶ 8–9.

Phoenix Sustainable Group, LLC, (hereinafter "Phoenix") provides equity funding for real estate

development projects, including student housing projects. *Id.* at ¶ 16.

In January, 2013, Phoenix contacted RGSH in an effort to become involved in future student

housing developments, particularly an upcoming projected called "Millennium One." *Id.* at ¶¶ 16–

17. RGSH responded that it would consider Phoenix's involvement, but only if participating

investors were identified. *Id.* at ¶ 18. After exchanging information about the project, Phoenix

indicated that a potential, unnamed investor was interested in the project. *Id.* at ¶ 26. Before

disclosing information about the investor, Phoenix had three requirements: (1) that RGSH sign a

confidentiality agreement; (2) that Phoenix be given an ownership interest in the project; and (3) that RGSH sign a "term sheet" that identified the ownership and operating structure of the project, including Phoenix's ownership and ability to control the project.

On April 19, 2013, RGSH signed the required confidentiality agreement, which in pertinent part stated: "[RGSH] must not circumvent [Phoenix] with regard to any potential investors or developers introduced to [RGSH] by [Phoenix]." *Id.* at ¶¶ 33–34. On April 21, 2013, RGSH returned the signed term sheet to Phoenix, which included a similar non-circumvention clause stating that RGSH would not circumvent Phoenix with regard to any potential investors introduced by Phoenix in subsequent investments. *Id.* at ¶¶ 37–42. After receiving the signed confidentiality agreement and term sheet, Phoenix disclosed the identities of the potential investors as Spring Creek Investment Management, LLC (hereinafter "Spring Creek") and a billionaire family out of Philadelphia, Pennsylvania. *Id.* at ¶ 43. After Phoenix identified Spring Creek to RGSH, RGSH communicated directly with Spring Creek's representatives regarding the Millennium One project and subsequently finalized Spring Creek's investment in the project on July 19, 2013. *Id.* at ¶ 48.

In April, 2015, Spring Creek contacted RGSH, expressing interest in investing in future student housing projects. RGSH told Spring Creek about an upcoming project in Fort Myers, Florida called the "Reef" project. *Id.* at ¶¶ 49–53. RGSH formed a special-purpose entity called FGCU-Reef, LLC, which began direct negotiations with Spring Creek. *Id.* Subsequently, Spring Creek invested in the project. *Id.* In May, 2016, RGSH received a letter from Phoenix demanding that it be given the same interest in the Reef project as it had been given in the Millennium One project, and threatening action based on the non-circumvention clauses in the term sheet and confidentiality agreement from the Millennium One project. *Id.* at ¶ 55. RGSH refused, arguing, among other

things, that it had no ownership interest in the Reef project and that the actual owner, FGCU-Reef, LLC, was not bound by agreements negotiated between Phoenix and RGSH.

RGSH filed suit on June 27, 2016, in the Ninth Judicial Circuit of Florida, seeking a declaration invalidating the non-circumvention clauses of the term sheet and confidentiality agreement. On July 28, 2016, Phoenix removed the case to this Court based on diversity jurisdiction. On August 3, 2016, Phoenix filed a Motion to Stay Litigation and to Compel Arbitration or Dismiss (Doc. 6). On August 22, 2016, before replying to Phoenix's Motion to Stay, RGSH filed a Demand for Arbitration and Statement of Claim against Phoenix with the American Arbitration Association (hereinafter "AAA") in Charlotte, North Carolina. Doc. 18, Ex. B. On August 26, 2016, RGSH filed its Response to Phoenix's Motion to Stay (Doc. 26). On September 1, 2016, while the Motion to Stay (Doc. 6) remained pending before the Court, Phoenix filed the Emergency Motion to Enforce the Parties' Negotiated Arbitration Provision (Doc. 20).

While neither party objects to arbitration, the parties disagree on the required location and arbitrator. RGSH argues that it has selected a neutral site—Charlotte, North Carolina—and that the required entity is the AAA, while Phoenix argues that the proceedings should be held in Chicago, Illinois, before some other entity. Phoenix seeks a stay of the arbitration proceeding initiated by RGSH because it faces irreparable harm: namely, that it "will be forced to expend significant resources preparing its answering statement and paying AAA filing fees and costs" and "trapped in an arbitration forum and location it never agreed to." Doc. 18 at 1, 10.

By its Motion, Phoenix requests that the Court: (1) declare that the agreement does not require arbitration before the AAA; (2) declare that the correct location for arbitration is Chicago, Illinois; and (3) stay, dismiss, enjoin, or declare *void ab initio* the AAA claim filed by RGSH.

## II.     Analysis

A preliminary injunction is warranted if the movant demonstrates "(1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest." *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers*, 788 F.3d 1318, 1322 (11th Cir. 2015). Further, a "preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites." *Id.* (citations omitted).

The Court does not agree that Phoenix will suffer irreparable injury upon answering the arbitration demand. An injury is irreparable if "it cannot be undone through monetary remedies," or if damages would be "difficult or impossible to calculate." *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010) (citations omitted). Here, the potential injury faced by Phoenix is monetary by definition: the costs of responding to RGSH's arbitration demand. As such, Defendant has not demonstrated that it will suffer an irreparable injury and, therefore, the request for injunctive relief will be denied.

Phoenix's remaining requests regarding the location of the arbitration and the arbitrator are already before the Court in Defendant's Motion to Stay and to Compel Arbitration or Dismiss (Doc. 6) and Plaintiff's Response to the same. *See* Doc. 6; Doc. 14; Doc. 16. Accordingly, they will be denied as moot.

It is, therefore, **ORDERED** that Defendant's Emergency Motion to Enforce the Parties' Negotiated Arbitration Provision (Doc. 18) is **DENIED** in part, and **DENIED AS MOOT** in part, as set forth above.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 7, 2016.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party