# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**R & G STUDENT HOUSING, LLC,**

    **Plaintiff,**

**v.**                                                         **Case No:   6:16-cv-1363-Orl-31GJK**

**PHOENIX SUSTAINABLE GROUP, LLC,**

    **Defendant.**

## ORDER

This matter is before the Court on the Motion to Stay Litigation and to Compel Arbitration (Doc. 6) filed by the Defendant, Phoenix Sustainable Group, LLC (hereinafter "Phoenix"), and the Response (Doc. 14) filed by the Plaintiff, R&G Student Housing, LLC (hereinafter "RGSH").

**I.    Background**

The issue before the Court arises from a disagreement regarding the development of a student-housing project called "Millennium One" and a confidentiality agreement signed in conjunction with the project. The confidentiality agreement contained an arbitration clause that states the following:

> Any dispute, action or proceeding arising directly, indirectly, or otherwise in connection with, out of, related to, or from this Agreement or any transaction covered hereby must be resolved by arbitration in a neutral site in accordance with the rules of the American Arbitration Association. If [RGSH and Phoenix] are unable to agree upon a neutral site, then the site is Chicago, Illinois.

Doc. 2-2, ¶ 5.

RGSH filed suit on June 27, 2016, in the Ninth Judicial Circuit of Florida, seeking a declaration invalidating a portion of the agreements related to the Millennium One project. On July

28, 2016, Phoenix removed the case to this Court based on diversity jurisdiction. On August 3, 2016, Phoenix filed a Motion to Stay Litigation and to Compel Arbitration or Dismiss (Doc. 6). On August 22, 2016, before replying to Phoenix's Motion to Stay, RGSH filed a Demand for Arbitration and Statement of Claim against Phoenix with the American Arbitration Association (hereinafter the "AAA") in Charlotte, North Carolina. Doc. 18-B. On August 26, 2016, RGSH filed its Response to Phoenix's Motion to Stay (Doc. 26). On September 1, 2016, while the Motion to Stay (Doc. 6) remained pending before the Court, Phoenix filed the Emergency Motion to Enforce the Parties' Negotiated Arbitration Provision (Doc. 20). The Court denied the Emergency Motion in part because the issues addressed there were already before the Court in the subject of this Order.

In short, while neither party objects to arbitration, the parties disagree on the required location and arbitrator. RGSH argues that it has selected a neutral site—Charlotte, North Carolina—and that the required arbitrating entity is the AAA, while Phoenix argues that the proceedings should be held in Chicago, Illinois, before some other entity.

**II.   Legal Standard**

There is a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "Doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24–25. "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about the matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (internal citations omitted). The question of whether the court or the arbitrator decides arbitrability is "'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 93 (2002) (quoting *AT & T Techs., Inc. v. Commc'ns Workers*

*of America*, 475 U.S. 643, 649 (1986). Therefore, a court may determine that parties agreed to arbitrate "the very issue of arbitrability where there is clear and unmistakable evidence that they did so." *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014).

## III.   Discussion

In *Prostyakov v. Masco Corp.*, 513 F.3d 716, 718 (7th Cir. 2008), the parties entered into a settlement agreement after their business relationship deteriorated. In relevant part, the parties agreed that "any future disputes between them would be settled by 'private' arbitration" and that "the rules of the American Arbitration Association (AAA) would apply and govern the conduct of the arbitration." *Id.* Years later, Prostyakov, the plaintiff, claimed that Masco, the defendant, breached the agreement and filed a demand for arbitration with the AAA. *Id.* at 720. Masco responded by arguing "that the AAA lacked 'jurisdiction' over the dispute—which, in this context, meant that the parties did not agree to have the AAA arbitrate the claims." *Id.* at 721. "Specifically, Masco assert[ed] that the Agreement provided that the arbitration would be conducted 'privately,' meaning without the involvement of the AAA." *Id.*

The Seventh Circuit "quickly disposed of Masco's argument." *Id.* at 723. The court found that "Masco and Prostyakov did, in fact, submit to AAA participation by agreeing that the arbitration would be governed by AAA rules. Rule R-2 of AAA Commercial Arbitration Rules states that 'when parties agree to arbitrate under these rules . . . they thereby authorize the AAA to administer the arbitration.'" *Id.* at 724. Therefore, arbitration in front of the AAA was proper under the arbitration clause. *Id.*

In the current case, Phoenix argues that the arbitration provision in the confidentiality agreement does not require that the AAA facilitate arbitration proceedings. In pertinent part, the confidentiality agreement states that "[a]ny dispute . . . arising . . . out of . . . this Agreement or any

transaction covered hereby must be resolved by arbitration in a neutral site in accordance with the rules of the American Arbitration Association." Doc. 16 at 2. As the Seventh Circuit noted in *Prostyakov*, Rule R-2 of the AAA Commercial Arbitration Rules provides that "[w]hen parties agree to arbitrate under these rules . . . , they thereby authorize the AAA to administer the arbitration." Rule R-2 also provides that "Arbitrations administered under these rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so."

Therefore, although RGSH and Phoenix did not select an arbitrating entity in their agreement, reference to the AAA rules implies that the AAA is authorized as an arbitrating entity. Additionally, by incorporating the AAA rules into their agreement, the parties have clearly and unmistakably agreed that the question of arbitrability is to be decided via arbitration. *See Terminix Intern. Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) (looking to AAA Rule 8(a), which gives the arbitrator the power to rule on the scope or validity of an arbitration clause when determining that, because the parties incorporated the AAA rules into their agreement they "clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause [was] valid"); *see also U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) ("[W]hen parties incorporate the rules of the [American Arbitration] Association into their contract, they 'clearly and unmistakably agree [ ] that the arbitrator should decide whether the arbitration clause [applies].'") (citations omitted).

As such, it is hereby **ORDERED** that the Motion to Stay is **GRANTED** pending arbitration with the AAA. The parties are directed to file a status report on January 31, 2017, and every ninety days thereafter, until the matter is resolved. The clerk is directed to administratively close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 27, 2016.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party